UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES | * | DOCKET NO. 10CR206 (WWE) |
|---|---|---|
| v. | * | |
| ROLAND PREJEAN | * | JULY 6TH, 2013 |

## SENTENCING MEMORANDUM AND POSITION PAPER WITH RESPECT TO SENTENCING FACTORS

Undersigned Counsel hereby submits the following Sentencing Memorandum and Position Paper with respect to Sentencing factors:

1.

Mr. Prejean is scheduled for sentencing on June 19th, 2013.

2.

Mr. Prejean and counsel have reviewed the PSR together.

### OBJECTIONS TO THE PSR

3.

As to the facts:

a. ¶4, while not an objection per se, it is my understanding that many of these disciplinary infractions are a direct result of Mr. Prejean's mental health conditions and, for example, involve self-cutting and the like. Due at least in part to the facilities inability to deal with someone with his mental conditions, he has been held in solitary confinement with the exception of a short period of time when he was housed at a federal medical facility that had the staff and training to deal with his condition.

b. ¶19, there is no evidence of what the "substantial disruption" and substantial expenditure in funds, in addition to what would normally be spent on the Emergency Services Unit as one assumes this is a unit that exists and is funded no matter the volume or number of calls. While this very well may be true and, as we have no evidence to dispute this alleged fact, we could object and put the government to their burden we will not do so based upon the reports I have read and people I have interviewed. I only wish to note that the extent may not and probably was not as onerous as the bare language suggests.

c. ¶37, again not necessarily an objection per se, but undersigned fails to see how this alleged "kill list" is significant for several reasons. Mr. Prejean has a lifelong and well documented history of mental illness. He has, both in interviews with police and letters written on his own too the prosecutors and various United States Judges, made outlandish claims of being a serial killer or a potential serial killer; and yet in others a person who holds grudges and merely wanted to scare people and used this as a cry for help. All of these people, some named and others unmanned, have some real or perceived connection to Mr. Prejean. They range from unnamed blonde postal carriers to the "President of the Mormon Church" and many other people all over the United States. I doubt Mr. Prejean knows or cares to know the name of the President of the Mormon Church or at the very least he would have referred to him by his proper title. The point is this was clearly a cry for attention and a desire, as he has put it on several occasions, to get psychiatric treatment.

d. ¶¶38-40, again we do not deny this activity occurred. But it should be noted that Mr. Prejean suffers from serious mental health conditions. If the government, which is holding Mr. Prejean, had kept him in a facility that is equipped to deal with his psychiatric issues I submit it is more likely than not he either would have been held under such proper conditions that he would not have engaged in that additional activity or the letters never would have made their way out of the facility.

4.

As to the Advisory Guideline Range calculations:

a. ¶ 48,53,57 & 61: After conducting further research, the objection to this enhancement is withdrawn and all others except for the one that follows are withdrawn.

b. ¶ 46, 51, 57 & 60: The enhancement of two levels under U.S.S.G. §2A6.1(b)(2)(A) for the offenses involving more than two threats is improper as we object.

LAW AND ARGUMENT & REQUEST FOR A VARIANCE

5.

Mr. Prejean's offense conduct detailed in each count in the PSR involved one letter, not two letters as I respectfully submit is required in most, and specifically in this one as well, cases. Except for a footnote in a 4th Circuit case that the government has urged the Probation Officer to rely on in his recommendations, it has been well established law that the language "more than two threats" in the advisory USSG refers to the number of communications, not those listed in said communications. See United

States v. Frazier, 391 F.3d. 866 (7th Cir., 2004); United States v. Crapeau, 215 Fed. Appx. 746 at 749, (10th Cir. 2007); United States v. Scott, 441 F.3d 1322 (11th Cir., 2006); United States v. Parker, 551 F.3d 1167 (10th Cir., 2008); United States v. Schrader, 737 F.Supp. 2nd 589 (S.D.W.V., 2010); U.S.S.G. § 2A6.1(b)(2)

6.

Even the case relied upon for this recommended new and troubling expansive interpretation of this adjustment stands for the opposite conclusion. In the short opinion of United States v. Stokes, 347 F.3d 103 (4th Cir. 2003), the accused wrote a "…letter [that] appeared to threaten the lives of Stokes' wife, "the man or men you are with," and Stokes' three children." Id., at 104. The PSR recommended the same two-level § 2A6.1(b)(2) enhancement as is requested here for identical reasons. "Stokes…assert(ed) that the enhancement for multiple threats was erroneous because his entire letter comprised a single threat, even though it was directed at multiple victims." Id., at 105. The Court agreed and did not apply the enhancement. The government confuses the footnote for a general proposition of law. The general proposition of law that the court applied and that should be in force here is "…whether these provisions authorize both an enhancement and a departure when, as here, the defendant made a single communication threatening multiple people. We conclude that only a departure, not an enhancement, is appropriate." Id., at 105-106. The Court concluded it's analysis as follows:

> If the Sentencing Commission had contemplated that a defendant who threatened several people in a single communication would be subject to a § 2A6.1(b)(2) enhancement, it would have included a word like "substantially" in the portion of Note 3(B) relating to multiple victims. Cf. United States v. Adelman, 168 F.3d 84,

4

87 (2d Cir.1999) (concluding that none of the specific offense characteristics listed in § 2A6.1 cover threats against multiple victims). In sum, Note 3(B) clarifies that the phrase "more than two threats," as used in § 2A6.1(b)(2), refers to the number of threatening communications, not the number of victims threatened. Thus, the district court erred in imposing a § 2A6.1(b)(2) enhancement. We therefore vacate the enhancement and remand for resentencing.

See United States v. Stokes, 347 F.3d 103, 106 (4th Cir. 2003).

7.

Thus, all the government can argue in this case is that the multiple persons, many unnamed, in my client's rambling and obviously mental illness contributed communications are a basis for a higher sentence using the courts discretionary authority within the advisory range or above via 18 U.S.C. §3553. We obviously do not feel an upward adjustment is warranted as there are several factors justifying a downward variance I will discuss below; but it is within their purview and role in our adversarial system to use it as a basis for such a request and the case they rely upon suggests only as much. Speculating on a foot note in an effort to expand the law and maximize the baseline advisory guideline sentence beyond that which is reasonable or justified by the law is not a reasonable argument. Additionally, there are several more recent post mandatory guideline regime opinions cited by counsel above that do not expand the reach of this enhancement and continue to uphold its traditional interpretation.

8.

Also of indirect assistance in the traditional and well established interpretation of this enhancement is the fact that Application Note 2 to U.S.S.G. § 3D 1.2, admittedly a

5

proviso dealing with grouping in general and not this particular enhancement, indicates that "victim" is not intended to include indirect or secondary victims. Thus evidencing a desire to focus on the main communication, not peripheral matters addressed in a communication.

9.

This objection being granted will result in the Advisory Guideline Calculations:

a. ¶68: Highest Adjusted Offense Level: 22.

b. ¶69: Combined Adjusted Offense Level: 26.

c. ¶72: Total Offense Level: 23.

d. ¶103: An Advisory Guideline Range of 70-87.

10.

When fashioning a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a)(2) provides that the District Court should consider the applicable Guidelines Range and any pertinent policy statements; see § 3553(a)(4)-(5); as well as the following factors:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed --

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the Defendant; and(d) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available; and

4. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See 18 U.S.C. § 3553(a)(2).

11.

Moreover, when considering Mr. Prejean's sentence, this Court should also consider that after Booker, a district court's sentence must be determined in light of the factors set forth in 18 U.S.C. § 3553(a) which specifically include the "need to avoid unwarranted sentencing disparities." See 28 U.S.C. Sec. 991(b)(1)(B). In United States v. Daas, 198 F.3d 1167 (9th Cir. 1999), the Ninth Circuit noted that a central goal of the Sentencing Guidelines is to eliminate sentencing disparity. Citing Koon v. United States, 518 U.S. 81 (1996)) ("The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the even handedness and neutrality that are the distinguishing marks of any principled system of justice."); see also United States v. Ray, 920 F.2d 562 (9th Cir. 1990) ("disparity was said to be one of the most important evils the Guidelines were intended to cure").

20.

Mr. Prejean is a troubled man with a substantial history of severe mental illness. The one positive in his horrible mental history can ironically be found in some of the actions he engaged in during his commission of the offenses in this case and it's aftermath. In many of the communications with me, to the court and mental health professionals he has repeatedly stated that his primary motivation is obtaining help for his mental health conditions. See PSR ¶¶ 12, 27, 40, 83-92, 96-98. This history of

mental illness is well document and factual. No reliance on the fact that he was declared competent for prosecution or a report evidencing some possible malingering in a mental health evaluation can negate these undeniable facts. He has been diagnosed, among other things, as bipolar, Antisocial personality disorder and is on multiple psychotropic medications. He has also spent a substantial portion of his live since adolescence at CVH and Whiting. PSR ¶97.

21.

No one can reasonably dispute this is a serious offense. The public does not want their public officials in these days of understandable heightened security threatened in this manner. However, justice must be tempered with mercy or it can become unjust. Society cannot fail to provide mental health treatment to people like Mr. Prejean and then be surprised at the result. Now this failure is surely not the part of the federal government which is prosecuting this case, but that does not justify the severe sentence or at one within the erroneous advisory range they have been pushing for in this case. Mr. Prejean, when he is calm and aware, and counsel want the same thing. A substantial but no longer than necessary sentence of 60 months with the strongest recommendation your honor can give that he be placed at a Federal Medical Facility that is capable of providing psychiatric care. Additionally, a substantial term of supervised release is warranted with a condition that he receive mental health treatment and take all prescribed medications. I don't think, in light of my client's mental health history and taking into account the need to protect the public, that a reasonable person with full knowledge of the facts can object to this request. Of course, the victims might and that would be understandable. But they do not have all the facts available to the court, probation and the prosecutor.

22.

While this is a variance from what I propose is the low end of the Advisory Guideline Range, 70 months, it is a modest variance and one that can be justified by not only 18 U.S.S.G. §3553 but precedent as well. Some legal justifications are listed below.

23.

18 U.S.C. §3553(a) (2) (D) requires a judge to consider "the need for the sentence imposed…to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." There is evidence that prison exposes less serious offenders to more serious ones, thus leading to increased recidivism. See Lynne M. Veraitis, Tomaslav V. Kovandzic, Thomas B, Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel data 1974-2002,* 6 Criminology & Public Policy 589 (2007). Thus, I submit that Mr. Prejean being in solitary has not been most the effective condition considering his health and a further sentence exposing him to more serious inmates will run counter to this mandate. A serious but less severe sentence at an FMC followed by extensive supervised release with needed treatment will accomplish this goal. It is well established that therapeutic mental health court programs designed to treat mental disorders as an alternative to longer prison sentences reduce recidivism rates. See Dale E. McNeil, Ph.D. and Renee L. Binder, M.D. *Effectiveness of a Mental Health Court in Reducing Criminal Recidivism and Violence,* 16 Am. J. Psychiatry 1395-1403 (Sept., 2007); Ohio Office of Criminal Justice Services, *Research Briefing 7: Recidivism of Successful Mental Health Court Participants* (April 2007).

24.

I must emphasize again that my client has an easily identifiable, if not glaringly obvious, mental health problem. My opponent may disagree about the severity of it or how best to deal with it vis a vis the sentence to be imposed, if at all, but it is obvious. What is also obvious is he was immediately and for a substantial period of time after his arrest housed in a facility not equipped to deal with them though they have, as far as I can tell, done their best under difficult circumstances. He was in a position where he was able either through lack of treatment or a failure on the part of the facility to understand his conditions to engage in the post arrest activity described in ¶¶38-40 of the PSR. It should be noted that he was in the hands of the government at the time. Even under the old mandatory regime a downward departure was authorized in a case where the government acted irresponsibly in an escape case when releasing a known alcoholic on furlough without making any effort to assist her. See United States v. Whitehorse, 909 F.2d 316 (8th Cir. 1990). While this is post arrest, it may be argued as an aggravator by the government at sentencing and if so I submit it should be disregarded. Also, while not the fault of the government the same can be said about his release by the State of Connecticut without Mr. Prejean being prepared to deal, as he put it, with the "outside world". Thus the lack of services available and/or provided to him I submit was a contributing factor in his conduct.

25.

Mr. Prejean obviously has some diminished capacity as a result of his psychiatric conditions, at least in terms of his intent to do or understand the nature of the harm his conduct did inflict. It is well settled even under the old mandatory regime that where a

person has some diminished capacity and issues controlling his behavior a District Court had authority to depart, so obviously that is even more allowable today. See United States v. Silleg, 311 F.3d 557 (2nd Cir. 2002). It has even been allowed in a fraud case involving gambling addiction. See United States v. Sadolsky, 234 F.3d 938 (6th Cir. 200). Thus, certainly in be permissible if not even favored in a case involving a person diagnosed with a serious psychiatric condition like Mr. Prejean.

26.

We are asking for 60 months with a lengthy term of supervised release as a slight variance below an Advisory low end range of 60 months by my calculations. This is a probation eligible case. Thus I am making a well-considered serious request taking into account the harm caused and Mr. Prejean's medical needs, which if met would be a benefit to society as a whole. It should also be noted that Mr. Prejean was not found with any weapons or destructive devices. Additionally, he has been held in what can only be described as cruel death row style conditions since his arrest years ago with the exception of the short period of time he was at FMC Springfield where they were equipped to deal with his condition. Surely years in "the hole" with limited exposure to sunlight or other people can in and of itself justify a greater variance than the small one I have requested and would but for Mr. Prejean's need for some serious treatment before transitioning

back to supervised release.  Thus I respectfully ask the Court rule in my favor on the objection I have briefed and impose the sentence requested by defense counsel.  As he is indigent and I have been appointed I request the Court not impose a fine.

                                                     RESPECTFULLY SUBMITTED,

                                                     S/J. Patten Brown, III
                                                   J. PATTEN BROWN, III
Law Offices of Pat Brown
924 Farmington Avenue, Suite 300
West Hartford, CT 06107
(860) 233-2151
fax: (860) 232-2672
jpb@patbrownlaw.com
Ct Fed Bar No. ct27633
TN BPR No. 021970
La. Bar Roll No. 21503
New York Reg No. 4607891

CERTIFICATE OF SERVICE

      I hereby certify that this SENTENCING MEMORANDUM by Mr. J. Patten Brown, III, counsel of record, and Mr. Roland Prejean was forwarded electronically via the Court's electronic filing system to all counsel of record this 6th day of July, 2013 or via U.S. Mail to the listed address of record to all counsel in the above captioned matter.

                S/J. Patten Brown, III
               J. Patten Brown, III, Esq.