UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
_____
                               )
UNITED STATES OF AMERICA,       )   No. 3:10-cr-00206-WWE-1
                               )    141 Church Street
            vs.                 )   New Haven, Connecticut
                               )
ROLAND PREJEAN,                 )   July 19, 2013
_____)
```

TRANSCRIPT OF SENTENCING HEARING

BEFORE THE HONORABLE WARREN W. EGINTON

SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:      DAVID E. NOVICK, AUSA
                        U.S. ATTORNEYS' OFFICE - NEW HAVEN
                        157 Church Street
                        23rd floor
                        New Haven, CT 06510

For the Defendant:      JOSEPH PATTEN BROWN, III, ESQ.
                        LAW OFFICES OF J. PATTEN BROWN, III
                        924 Farmington Avenue
                        3rd Floor
                        West Hartford, CT 06107


ECR Operator:           R. PAYTON

Clara Rubin
eScribers
700 West 192nd Street
Suite #607
New York, NY 10040
(973) 406-2250

I N D E X

| RULINGS: | PAGE | LINE |
|---|---|---|
| The pre-sentence report ("PSR") and findings of fact made therein are accepted, and the PSR is part of the record of the case. | 14 | 19 |
| The Defendant is sentenced to 70 months' incarceration. | 17 | 22 |
| No fine will be imposed. | 18 | 16 |
| There will be a mandatory special assessment of $100. | 18 | 18 |
| The term of supervised release will be three years. | 18 | 19 |
| The mandatory conditions of supervised release apply. | 19 | 6 |
| The Defendant is to cooperate in the collection of a DNA sample if asked. | 19 | 16 |
| The Defendant is to register in a program approved by Probation for mental-health treatment. | 19 | 20 |
| The Defendant is to participate in a program approved by Probation for inpatient or outpatient substance-abuse treatment and testing. | 20 | 4 |
| Restitution in the amount of $14,159.53 will be made to the victims. | 22 | 5 |
| Restitution payments will be suspended until the Defendant's release, and payment arrangements will be determined by Probation. | 23 | 9 |

Colloquy

(1:35 O'CLOCK, P.M.)

1

2    (Court called to order)

3    THE COURTROOM DEPUTY:  The Honorable United States

4    District Court is now open after recess.  Please be seated.

5    THE COURT:  Okay, this is United States v. Roland

6    Prejean, 3:10-206, and before me for sentencing.  I think I

7    have all the documents here that I have been given.  Attorney

8    Joseph Patten Brown represents Mr. Prejean; he's been

9    appointed and he's here in the court with his client.

10    MR. BROWN:  Yes, Your Honor.

11    THE COURT:  David E. Novick is the assistant United

12    States attorney.

13    MR. NOVICK:  Yes, Your Honor.

14    THE COURT:  All right, you want to swear him?

15    THE COURTROOM DEPUTY:  Please stand and raise your

16    right hand.

17            ROLAND PREJEAN, DEFENDANT, SWORN

18    THE COURTROOM DEPUTY:  Thank you.

19    THE COURT:  All right, we don't have to do anything

20    about adopting a plea, because he entered the plea before me

21    instead of before a magistrate judge.

22    You've been over the pre-sentence investigation

23    report with him, Mr. Brown?

24    MR. BROWN:  Yes, Your Honor, I have.

25    THE COURT:  And you filed a memorandum, which I have

Colloquy

1    read, and the memorandum noted that you had been over the PSR

2    with him.  And you filed what you called not an objection per

3    se but a sort of assistance to me for sentencing.

4         Why don't you sit down, and just speak right in the

5    mic.

6         MR. BROWN:  Thank you, Your Honor.  Yes.

7         THE COURT:  So let's go over the -- well, first of

8    all, you are Roland Prejean?

9         DEFENDANT PREJEAN:  Yes, sir.

10        THE COURT:  All right.  You're represented here by

11   Attorney Patten Brown, who's a very experienced criminal-

12   defense attorney.  You satisfied with his representation of

13   you?

14        DEFENDANT PREJEAN:  Yes, sir.

15        THE COURT:  Have you partaken of any drugs or

16   alcoholic beverages today?

17        DEFENDANT PREJEAN:  No, sir.

18        THE COURT:  I'll find you free of that influence.

19        You understand you're before me for sentencing on a

20   violation of the laws of the United States?

21        DEFENDANT PREJEAN:  Yes, sir.

22        THE COURT:  And, Mr. Patten Brown, you're satisfied

23   he understands the nature of these proceedings and can assist

24   you in representing him?

25        MR. BROWN:  I am, Your Honor.

Colloquy

1     THE COURT:  All right, we will proceed, then.

2         I've been over everything and it seems that it's

3 fairly complex because you don't group everything here.  We

4 have five counts divided into four groups because Counts I and

5 II are in group 1, and then you have III, IV and V in groups

6 2, 3, and 4.  And that's the way you pre-set it out and that's

7 the way the Government has dealt with it.

8         It seems to me that the best way to approach it is to

9 take the pre-sentence investigation report and see if we're

10 all in agreement on the approach to this from the standpoint

11 of looking at the guidelines.  As we all know, and everybody

12 keeps telling us, in memorandum after memorandum and case

13 after case, about the effects of the Supreme Court decisions

14 and the fact that, right after Booker, the guidelines are

15 advisory rather than mandatory.  But still they are taking off

16 points and they really carry out, in my judgment, what

17 Congress wanted by way of 3553(a) and (b).  I think 3553 is

18 really the bible and it's interpreted by the guidelines, so I

19 really rely heavily on 3553.

20         Now, they start at the bottom of page 11, with

21 paragraph 44.  Actually, you go back to paragraph 43 to note

22 that we're using November 1, 2012 sentencing guidelines, which

23 are the last ones published.  Counts I and II are grouped.

24 Counts III, IV and V, for obvious reasons, cannot be grouped,

25 because there're different individuals involved to whom the

Colloquy

1    communications were written.

2         So we start with a base offense level of violating

3    18 United States Code 44(e) and 18 United States Code 876(c).

4    The base offense level is 12.  Two levels were added because

5    there are more than two threats; that takes you to 14.  Four

6    levels were added because of substantial disruption of --

7    these threatening letters will certainly disrupt functions;

8    we're all familiar with them here in this courthouse.  And as

9    noted here, they had to evacuate the post office, the town

10   hall, the school building.  And then you add six more for the

11   victims being government people, especially the post-office

12   people involved.  So you get up to a total of twenty-four for

13   group 1.

14        When you get to group 2, you have the same 12 level

15   plus the same two increase and the four increase and the six

16   increase.  And you again end up with the same thing you did

17   under 1 and 2; you end up under Count III with a 24 level.

18        Group 3, which is Count IV, and group 4 is your Count

19   V, are a little bit less; they again start with 12.  They have

20   two but they don't have the four.  And the reason that they

21   don't have the four is that they don't find a disruption, the

22   public affairs being involved.  You had, therefore, added six,

23   government official; again, the importance of that takes you

24   to twenty.  And then we get group 4 on the same approach and

25   you get up to again twenty.  So the only difference is the

Colloquy

1    different communications we're dealing with.

2            Everybody in agreement with me so far?  Does anybody

3    want to comment on anything we've done so far?

4            MR. BROWN:  Well, Your Honor, I have withdrawn most

5    of my objections, but one of the objections that I maintained

6    for purposes of this hearing was the two-level enhancement

7    under 2A6.1(b)(2)(A), which is spelled out in paragraph 46,

8    51, 56 and 60 of the pre-sentence report; that's the one for

9    the more than two threats in a --

10           THE COURT:  Yes.  Now, what was your objection based

11   on?

12           MR. BROWN:  Well, Your Honor, my objection is simply

13   based on the same case that the Government cites.  I mean, and

14   I cited several other circuits that have dealt with this issue

15   directly or indirectly and they've all said that -- and then

16   one case directly has said that if Congress -- I mean --

17   "Congress" -- I'm sorry -- if the Sentencing Commission

18   intended the enhancement to apply as it's recommended in this

19   pre-sentence report, they would have stated so directly.  And

20   many of those cases, if not all, involve a situation where

21   someone is threatening more than one individual in a letter,

22   sometimes named, sometimes not -- or I think in one case it

23   might have been a phone call -- and the court said that, no,

24   that enhancement does not apply.

25           And so I'm simply relying on the case law.  I mean, I

Colloquy

1    certainly understand that there's this one footnote in a

2    Fourth Circuit case; it should be noted the communications in

3    that footnote were similar in the sense that the letter -- I

4    think, if I remember the case correctly -- had to do with --

5              THE COURT:  Oh, you're talking about Stokes?

6              MR. BROWN:  Yes, Your Honor.

7              THE COURT:  Yeah.

8              MR. BROWN:  And the court stated as plain as it can

9    that the enhancement doesn't apply in this situation and then

10   the Government clearly is entitled to argue that a greater

11   sentencing within, or even an increase beyond, the guidelines

12   is warranted; that's clearly within their right to do so in

13   this or any other case.  But I think that the guideline as

14   calculated here is incorrect and the case law is

15   overwhelmingly in my favor.

16             THE COURT:  Now, I think you got one typo in your

17   submission, but I think --

18             MR. BROWN:  Probably do.

19             THE COURT:  -- what you come out with is seventy.

20             MR. BROWN:  What was that, Your Honor?  I'm sorry.

21             THE COURT:  I think what you come out with is

22   seventy.  I think you have a typo in the memorandum.  But if

23   you look --

24             MR. BROWN:  Oh, you mean as far as the guideline

25   range, Your Honor?

Colloquy

1    THE COURT:  Yeah.  If you look at page 11 of your

2  submission, I think where you come out is really seventy

3  rather than sixty.  Now, you have a sentence in there under

4  paragraph 26; it says, "We're asking for sixty months with a

5  lengthy term of supervised release; that's a slight variance

6  below the low-end range of sixty months."  I think it's a long

7  range of seventy months and you're asking me to go down ten

8  below that.

9    MR. BROWN:  That is right, Your Honor.  I did

10  actually notice that before we started.

11    THE COURT:  Yeah.

12    MR. BROWN:  And you're correct.  I was --

13    THE COURT:  Okay, I'll just --

14    MR. BROWN:  -- frantically trying to find what the --

15    THE COURT:  -- make that change.

16    MR. BROWN:  -- right number was, but I couldn't

17  locate it before I started talking.  But --

18    THE COURT:  So --

19    MR. BROWN:  But you're right, Judge; seventy is --

20    THE COURT:  So I understand your --

21    MR. BROWN:  -- what I meant to say.

22    THE COURT:  -- your calculation brings you at

23  seventy.

24    MR. BROWN:  Yes, Your Honor.

25    THE COURT:  All right.  The Government want to

Colloquy

1   respond to Stokes?

2       MR. NOVICK:  Sure, Your Honor.  I'd start by saying

3   that, as I point out in my memorandum, we don't actually even

4   need to get as far as Stokes and the other cases on this

5   issue, to answer the question of whether this particular

6   enhancement applies.  And I say that because we can also look

7   at the fact that in the course of committing this conduct and

8   directly related to the conduct, the defendant, number one,

9   also threatened the same victim, in all cases, again, and, at

10  least in the first two groups, threatened those victims

11  directly related to a retaliation for him having reported the

12  first letter.

13      And the second reason why I think we don't actually

14  even need to proceed to Stokes is because he sent more than

15  fifty letters over a course of several months and, in reality,

16  actually sent well over half of those letters on the same day

17  or the day after that he sent the ones that are the subject of

18  his guilty pleas and subject of the indictments; and those are

19  certainly different communications and different victims.

20      So I'd say, first, Your Honor, we don't even need to

21  get that far; we can answer this question; we can get to this

22  enhancement.  And, I mean, both of those ways, I would

23  argue -- and I would make specific mention, Your Honor, of

24  the -- I did attach to my sentencing memorandum -- and

25  obviously, I would submit that that be part of the record

Colloquy

1    here -- several letters as well as a chart of many of the

2    letters -- or most of the letters that the defendant sent as

3    part of this conduct.

4          And addressing directly the issue of Stokes, if we

5    proceed that far, it's not just Stokes that leaves open this

6    possibility that in certain circumstances a single

7    communication could be construed as multiple threats.  There

8    are several other cases that I cite that, while not finding

9    that the facts met that criteria there, leaving open the

10   possibility that it could in other factual circumstances, and

11   that would be Frazer in the Seventh Circuit -- or, excuse

12   me -- yes, Frazer in the Seventh Circuit; Parker, which is a

13   Tenth Circuit case.  And there was also Scott, which is a

14   Sixth Circuit case where there were two letters in the same

15   mailing:  one threatening, I believe, the judge's family, and

16   the other threatening to blow up a federal building, which

17   were deemed by the court there to be separate threats.

18         And in this case I think, even if you move past the

19   first two reasons and proceed to this particular analysis,

20   each of these communications directed threats at distinct

21   recipients.  And I would say even in the latter two of the

22   groups, you had threats that were being made, delivered to

23   third parties -- excuse me, Your Honor -- delivered to third

24   parties but threatening a number of different and separate and

25   distinct individuals and not necessarily the recipients of the

Colloquy

1  letters themselves.

2          And so I think that even if you're applying just

3  the -- even if you didn't look outside the four corners of the

4  four letters that form the basis of the indictment, applying

5  that rationale in Scott, in Frazer, in Parker, in Stokes, you

6  can still get to, and should, I would submit, Your Honor,

7  still get to the existence of more than two threats.  But

8  again, I don't think the Court needs to solely rely on Stokes

9  and the related cases in order to get to that result.

10          THE COURT:  Because of the facts in this case?

11          MR. NOVICK:  Exactly.

12          THE COURT:  Yeah.  Okay.  All right, well, I wanted

13  to get the record clear for both sides.

14          Continuing on page 13, we have units -- four units.

15  And the highest offense level is 24; but when you combine

16  that -- which you can do with group 1, and then combine that

17  with the other groups which can't be put together, you get 28.

18  And the Government's making a motion on the reductions set

19  forth in paragraphs 70 and 71?

20          MR. NOVICK:  Yes, Your Honor, we are making that

21  motion.

22          THE COURT:  All right, so we'll put down the 25.  And

23  25, with a criminal-history category, you have -- criminal-

24  history category of IV, you have 84 to 105 months.  So the

25  difference between counsel on this is a matter of about

Colloquy

1   fourteen months.  If you don't go down to the sixty which

2   Mr. Patten Brown wants me to, if you would take the seventy,

3   by his computation, you're talking about knocking off about a

4   year from what the Government would like on the guidelines.  I

5   think that's appropriate here.

6        Let me, however, ask Mr. Patten Brown if he has

7   anything else he wants to raise that has not been raised

8   orally and in his excellent papers he's filed.

9        MR. BROWN:  No, Your Honor.  I do have -- obviously I

10  disagree with my colleague's assessment of the guidelines, and

11  I have some reasons why.  I understand, from -- though the

12  Court didn't say it directly, I gather that you're denying my

13  objection.  But if the Court's intent is to sentence my client

14  to a variance at seventy months, I seriously doubt my client

15  is going to want me to appeal the matter.  So I think that's

16  just all I -- it will be academic at this point.

17       THE COURT:  Okay.

18       MR. BROWN:  But --

19       THE COURT:  All right.

20       MR. NOVICK:  So I'll just note my objection for the

21  record but just leave it at that.

22       THE COURT:  All right.  Thank you.

23       All right, Government?

24       MR. NOVICK:  Your Honor, I just wanted to clarify

25  that the -- is the Court adopting factual findings of the PSR

1  as its own factual findings?

2      THE COURT:  Well, I wanted to go through it right

3  now.  I think we might tie it together this way:  We've been

4  through the pre-sentencing report, and I asked Mr. Patten

5  Brown for his comments and he hasn't made objections but he's

6  put his position on the record.

7      So you've set out all you want to say with respect to

8  my position on the pre-sentence report?

9      MR. BROWN:  Yes, Your Honor.  The only thing -- only

10  other thing I would ask the Court to do as part of its

11  sentence is to recommend that my client be housed in a

12  facility where he can receive mental-health treatment.

13      THE COURT:  Oh, yeah, that's going to --

14      MR. BROWN:  And --

15      THE COURT:  -- be important.  All right, well --

16      MR. BROWN:  And perhaps ask --

17      THE COURT:  -- I'm going to --

18      MR. BROWN:  Oh.

19      THE COURT:  -- accept the pre-sentence report and the

20  findings of fact made in the pre-sentence report and make it

21  part of the record of the case.

22      Now, Government have anything else it'd want to add

23  here?

24      MR. NOVICK:  Your Honor, I think that Government has

25  made its position, with regard to sentencing, clear in our

Colloquy

1   memorandum.  Obviously, we believe the conduct here is serious

2   conduct, truly does affect the people that receive these

3   threatening and extremely, I would argue, Your Honor,

4   disturbing communications, who don't know about Mr. Prejean's

5   history and just are receiving these letters that threaten not

6   just death but horrible deaths.  And so I think that this is

7   serious conduct.

8           And I would like to just highlight one other thing

9   that I did note in my sentencing memorandum, and that is, this

10  is not a case, in my opinion, where the government has -- and

11  it's a small-G government -- the government, the state or the

12  various psychiatric hospitals have failed to treat the

13  defendant, failed to attempt to treat the defendant.  And the

14  concern, I think, ultimately, Your Honor, is, if the argument

15  is to reduce his sentence in favor of some private

16  hospitalization, the obvious answer to that is, why would this

17  be any different than any other time?  I don't think that

18  Probation has access to facilities that are necessarily better

19  than Connecticut Valley Hospital, which is one of the premier

20  facilities for this kind of treatment, in the state of

21  Connecticut.

22          And so the concern is the defendant has been found

23  competent, he's been found to have understood what he was

24  doing at the time he was doing it and had particular reasons

25  to be doing it, but, nonetheless, the public ought not to be

Colloquy

1    put at risk through further offenses during the time when the

2    defendant is trying to undergo treatment and trying to change

3    what he's been doing, trying to change his conduct.  So I'd

4    argue that the better place for him, through any of these

5    periods of time, would be at -- and I agree with Mr. Brown --

6    at a federal medical facility such as Butner or Devens.

7              THE COURT:  Yeah, we need to be very careful about

8    that.

9              All right, Mr. Prejean, you want to say something to

10   me before I sentence you?

11             DEFENDANT PREJEAN:  I just -- I don't have much to

12   say, but I would like to apologize to the Court for all the

13   trouble that I caused.  I realize now that those letters are

14   more than just letters and, when people receive them, that

15   there is real harm that was done; and I feel really bad for

16   that.  I feel like I was way off base in trying to -- I was

17   trying to get help.  I thought they would throw me back in the

18   hospital if I wrote a bunch of letters.  And -- but

19   nonetheless, I wrote the letters and I worded them the way I

20   did because I wanted to scare people because I was -- I

21   just -- I didn't know what else to do.

22             But I do apologize.  And I apologize to the Court for

23   the letters I sent from Wyatt as well, because when I first

24   got locked up, it was a real adjustment for me and I really

25   panicked and thought that I wanted to be put away forever, and

1   so I thought I could cause myself as much trouble as possible

2   by doing that.  And now that I look back on things, I realize

3   how much harm those letters caused.  And I'm looking to get to

4   a place where I can have mental-health treatment; I know I've

5   had a lot in the past, but I'm maturing, I think.  I think

6   this time in incarceration has helped me mature.  And I look

7   forward to improving my life and finding other ways to seek

8   help.  Thank you.

9            THE COURT:  Well, you're fairly young; I mean, you're

10  middle -- for me you're very young.  But you're middle-aged.

11  And your presentation to me right now is very impressive to me

12  because it's so coherent and it makes so much sense, and that

13  means you're making a lot of progress.  So I'm encouraged that

14  you'll be able to do this, to turn yourself around.

15           Now, you scared the living daylights out of a lot of

16  people in the process, but --

17           DEFENDANT PREJEAN:  I know.

18           THE COURT:  -- I think we may have some confidence

19  that you will not do that in the future; I hope we're right.

20           Well, Probation was impressed by it, and that's why

21  they made the recommendation they made.  I think, under 3553,

22  I'm comfortable with sentencing you to seventy months; it's a

23  nonguideline sentence because I'm -- if you go on the

24  Government's approach to it, you end up with eighty-four.  If

25  you go on Mr. Brown's interpretation of the guidelines, taking

Sentencing

1    out the two-level, then I'm really giving him, in essence, a

2    guideline sentence; it's just not the guidelines that the

3    Government feels should be applied.  So to play safe, I will

4    say it's a nonguideline sentence of seventy months.

5         Based upon what you just said to me yourself but also

6    what Probation said in its sentencing recommendation and in

7    the pre-sentence report, you're not a hopeless case by any

8    means.  And we really are accomplishing the purposes of 3553

9    and try to give you some help, and counsel pointed out that

10   there are institutions available to you give you that help.

11        So in sentencing you, I will recommend, whenever the

12   Bureau of Prisons feels is appropriate, to give you a good

13   mental-health treatment program; as counsel pointed out, there

14   are institutions available in our area that can do that, and I

15   hope your prison will select one of those.

16        There won't be any fine here.  You can't afford to

17   pay a fine under your circumstances.  There's a mandatory

18   special assessment of a hundred dollars.  The term of

19   supervised release will be three years.  And it's important

20   for me to emphasize to you that the Probation Department will

21   be very, very important to you when you come out of prison.

22        (Judge sneezes)

23        Pardon me.

24        You will be under the supervision of a probation

25   officer and he or she will be --

Sentencing

1          (Judge sneezes)

2          Pardon me.

3          -- very important in your life, and you want to do

4    everything they tell you to do and don't do anything they tell

5    you not to do.

6          The mandatory conditions of supervised release apply.

7    Do not commit another federal, state --

8          (Judge sneezes)

9          This must be the asthma season.

10          -- federal, state or local crime.  Do not unlawfully

11    possess a controlled substance.

12          I'm not going to impose the standard condition on

13    unlawful use of controlled substance and drug testing, because

14    we have a special program we're going to put into effect in

15    just a moment.

16          Cooperate in the collection of a DNA sample if you

17    are asked to do that.

18          And here are the other conditions, which will bear

19    upon both mental and drug (sic):

20          Register in a program approved by Probation for

21    mental-health treatment.  The Probation will look at what your

22    treatment has been while you've been incarcerated and they may

23    just recommend continuing that, or they may decide to shift it

24    to something else.  You may have to pay for all or part of the

25    costs associated with that, but probably not, because

Sentencing

1  Probation is very good about not imposing useless conditions,

2  and try to shift costs if you can't do it.  So they will look

3  at it and decide whether you can pay for any portion of it.

4          Participate in a program approved by Probation for

5  inpatient or outpatient substance-abuse treatment and testing.

6  You may have to pay all or part of that cost; and again, I

7  don't think that'll happen.  But the important thing is,

8  whatever Probation tells you to do in a mental-health program

9  and a substance-abuse program, follow their recommendations

10  completely.

11          You may have to submit to a search of your person,

12  house or vehicle at any time of day or night, if Probation

13  decides that's needed, without requirement of a search

14  warrant.

15          Do not possess a firearm or any other dangerous

16  weapon.

17          Now, you have a right of appeal from this sentence,

18  to the extent you haven't waived any right of appeal, within

19  fourteen days, to be represented by Mr. Patten or by any other

20  attorney of your choice.  If you can't afford an attorney,

21  I'll have an attorney appointed for you.

22          All right, anything I've forgotten, Government?

23          MR. NOVICK:  Your Honor, there's -- in paragraph 1 --

24  excuse me -- paragraph 110 of the PSR discusses restitution.

25          THE COURT:  Oh, yes.  What about that restitution

Sentencing

1  situation?

2      MR. NOVICK:  And I would just ask the Court order

3  restitution inconsistent with -- excuse me -- order

4  restitution consistent with paragraph 110, which lists the

5  amounts and the respective victims; my calculation is that is

6  approximately $14,159.53 in total.  And I would just ask that

7  the Court impose, for the time being, some nominal monthly

8  amount and the defendant would have the ability, when he gets

9  out, to ask for a judgment in that amount, depending on his

10  salary at that time.

11      MR. BROWN:  Your Honor, the Restitution Act requires

12  certain documentation be provided, I believe, before the

13  Government can order restitution.  And, ask that anything that

14  doesn't have that documentation, I would object to.

15      MR. NOVICK:  We've provided the information to the

16  probation office, which made it a part of the probation

17  report.  And I think it's appropriate, as part of the Court

18  adopting the findings of fact in the probation report, that

19  the restitution numbers be adopted as well.  The probation

20  office -- I provided the information, to the probation office,

21  that supported the amounts of money requested, provided by the

22  victims in this case, and that's been reflected in paragraph

23  110.

24      THE COURT:  All right, now, taking --

25      MR. BROWN:  Well, that I'll --

Sentencing

1    THE COURT:  -- paragraph 110, the total seems to be

2    14,159.53.  I just redid those computations also.  I agree

3    with the Government on that.

4    So that's a good reason for me not to impose a fine.

5    I'm not imposing a fine.  But restitution will be ordered as

6    set forth in paragraph 110 of the pre-sentence investigation

7    report, which we made part of the judgment in the case.

8    The restitution can be made through the Bureau of

9    Prisons Inmate Financial Responsibility Program, with a -- I

10   think, probably 300 dollars per month is appropriate; and if

11   that has to be adjusted, they can seek adjustment of that.

12   MR. BROWN:  Well, Your Honor, if I could be heard on

13   that.  I would --

14   THE COURT:  Yeah.

15   MR. BROWN:  In the first place, the Mandatory Victims

16   Restitution Act requires certain things directly from the

17   victims, not in -- so I would still object to the extent that

18   act has not been complied with, regardless of where the

19   Government got its figures from.

20   But secondly, Your Honor, if you're going to order

21   the restitution, I would ask you to order it to commence upon

22   his release from prison.  Someone like Mr. Prejean is not

23   going to be able to make enough money, and if you -- the

24   prisoner restitution program will prevent him from having a

25   lot of privileges if he doesn't participate in it.  And with

Sentencing

1   the amount of money that he's going to be able to earn, which

2   with his condition is probably going to be minimal if at all,

3   he'll have to depend on whatever his family is willing to send

4   him, which so far has been nothing.

5          THE COURT:  Well, I think --

6          MR. BROWN:  It will --

7          THE COURT:  -- what you're saying makes sense because

8   it enables Probation to decide what the monthly payments ought

9   to be.  So we'll suspend the payments till he's released from

10  prison, then let Probation determine how the payments will be

11  made.

12         MR. NOVICK:  Your --

13         THE COURT:  I am concerned about your point, which is

14  familiar to me because I've had it before many times, that

15  there should be a request for restitution on file.  What's the

16  status of these various things that Probation put in?  Did

17  they go just upon your submission to them, or did they have

18  some proof that these people were requesting restitution?

19         MR. NOVICK:  Your Honor, my recollection -- I don't

20  have the paperwork in front of me -- is that I requested --

21  the FBI requested information from the individual victims,

22  that they then provided them with the information, which was

23  then forwarded to me and which I forwarded to the probation

24  office.

25         What I would suggest, then, if there is going to be

Sentencing

1    an objection here, I will gather the appropriate affidavits

2    from the respective victims and provide them to the Court.  I

3    am entitled -- the Government's entitled to, I believe, sixty

4    days, following sentencing, for the entry of the restitution

5    order.  And if that's the -- if there's an objection, then the

6    Government will proceed along that path.

7              THE COURT:  Well, I think that's the way the

8    Government should proceed.  I agree with that completely.  So

9    why don't you get the affidavits -- and we'll make them part

10   of the record -- within sixty days.

11             MR. NOVICK:  Very good, Your Honor.

12             THE COURT:  That'd be fine.

13             All right, anything else?

14             MR. BROWN:  No, Your Honor.

15             THE COURT:  All right, thank you very much.

16             MR. NOVICK:  Thank you, Your Honor.

17             THE COURTROOM DEPUTY:  The Honorable United States

18   District Court is now in recess.

19             (Whereupon the matter was adjourned at 2:09 o'clock,

20   p.m.)

21

22

23

24

25

C E R T I F I C A T I O N

    I, Clara Rubin, Official Court Transcriber for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of the proceedings in the aforementioned matter to the best of my skill and ability.

Date:   June 23, 2014

_____

CLARA RUBIN

eScribers, LLC
700 West 192nd Street, Ste. #607
New York, NY 10040
(973)406-2250
operations@escribers.net

**$**

**$14,159.53 (1)**
21:6

**A**

**ability (1)**
21:8
**able (3)**
17:14;22:23;23:1
**academic (1)**
13:16
**accept (1)**
14:19
**access (1)**
15:18
**accomplishing (1)**
18:8
**Act (3)**
21:11;22:16,18
**Actually (5)**
5:21;9:10;10:3,13,16
**add (2)**
6:10;14:22
**added (3)**
6:4,6,22
**addressing (1)**
11:4
**adjourned (1)**
24:19
**adjusted (1)**
22:11
**adjustment (2)**
16:24;22:11
**adopted (1)**
21:19
**adopting (3)**
3:20;13:25;21:18
**advisory (1)**
5:15
**affairs (1)**
6:22
**affect (1)**
15:2
**affidavits (2)**
24:1,9
**afford (2)**
18:16;20:20
**again (7)**
6:16,19,23,25;10:9;
12:8;20:6
**agree (3)**
16:5;22:2;24:8
**agreement (2)**
5:10;7:2
**alcoholic (1)**
4:16
**along (1)**
24:6
**amount (3)**
21:8,9;23:1

**amounts (2)**
21:5,21
**analysis (1)**
11:19
**apologize (3)**
16:12,22,22
**appeal (3)**
13:15;20:17,18
**applied (1)**
18:3
**applies (1)**
10:6
**apply (4)**
7:18,24;8:9;19:6
**applying (2)**
12:2,4
**appointed (2)**
3:9;20:21
**approach (4)**
5:8,10;6:24;17:24
**appropriate (4)**
13:5;18:12;21:17;
22:10;24:1
**approved (2)**
19:20;20:4
**approximately (1)**
21:6
**area (1)**
18:14
**argue (4)**
8:10;10:23;15:3;
16:4
**argument (1)**
15:14
**around (1)**
17:14
**assessment (2)**
13:10;18:18
**assist (1)**
4:23
**assistance (1)**
4:3
**assistant (1)**
3:11
**associated (1)**
19:25
**asthma (1)**
19:9
**attach (1)**
10:24
**attempt (1)**
15:13
**Attorney (7)**
3:7,12;4:11,12;
20:20,20,21
**available (2)**
18:10,14
**away (1)**
16:25

**B**

**back (3)**

5:21;16:17;17:2
**bad (1)**
16:15
**base (3)**
6:2,4;16:16
**based (3)**
7:10,13;18:5
**basis (1)**
12:4
**bear (1)**
19:18
**below (2)**
9:6,8
**best (1)**
5:8
**better (2)**
15:18;16:4
**beverages (1)**
4:16
**beyond (1)**
8:11
**bible (1)**
5:18
**bit (1)**
6:19
**blow (1)**
11:16
**Booker (1)**
5:14
**both (3)**
10:22;12:13;19:19
**bottom (1)**
5:20
**brings (1)**
9:22
**Brown (38)**
3:8,10,23,24;4:6,11,
22,25;7:4,12;8:6,8,18,
20,24;9:9,12,14,16,19,
21,24;13:2,6,9,18;14:5,
9,14,16,18;16:5;21:11,
25;22:12,15;23:6;
24:14
**Brown's (1)**
17:25
**building (2)**
6:10;11:16
**bunch (1)**
16:18
**Bureau (2)**
18:12;22:8
**Butner (1)**
16:6

**C**

**calculated (1)**
8:14
**calculation (2)**
9:22;21:5
**call (1)**
7:23
**called (2)**

5:21;16:17;17:2
**can (14)**
4:23;8:8;10:6,21,21;
12:6,16;14:12;17:4;
18:14;20:3;21:13;22:8,
11
**careful (1)**
16:7
**carry (1)**
5:16
**case (19)**
5:12,13;7:13,16,22,
25;8:2,4,13,14;11:13,
14,18;12:10;14:21;
15:10;18:7;21:22;22:7
**cases (5)**
7:20;10:4,9;11:8;
12:9
**category (2)**
12:23,24
**cause (1)**
17:1
**caused (3)**
16:13;17:3
**certain (3)**
11:6;21:12;22:16
**certainly (3)**
6:7;8:1;10:19
**change (3)**
9:15;16:2,3
**chart (1)**
11:1
**choice (1)**
20:20
**Circuit (5)**
8:2;11:11,12,13,14
**circuits (1)**
7:14
**circumstances (3)**
11:6,10;18:17
**cite (1)**
11:8
**cited (1)**
7:14
**cites (1)**
7:13
**clarify (1)**
13:24
**clear (2)**
12:13;14:25
**clearly (2)**
8:10,12
**client (4)**
3:9;13:13,14;14:11
**Code (2)**
6:3,3
**coherent (1)**
17:12
**colleague's (1)**
13:10
**collection (1)**
19:16
**combine (2)**

3:2;4:2
**careful (1)** 

**can (14)**

12:15,16
**comfortable (1)**
17:22
**commence (1)**
22:21
**comment (1)**
7:3
**comments (1)**
14:5
**Commission (1)**
7:17
**commit (1)**
19:7
**committing (1)**
10:7
**communication (1)**
11:7
**communications (6)**
6:1;7:1;8:2;10:19;
11:20;15:4
**competent (1)**
15:23
**completely (2)**
20:10;24:8
**complex (1)**
5:3
**complied (1)**
22:18
**computation (1)**
13:3
**computations (1)**
22:2
**concern (2)**
15:14,22
**concerned (1)**
23:13
**condition (2)**
19:12;23:2
**conditions (3)**
19:6,18;20:1
**conduct (7)**
10:7,8;11:3;15:1,2,7;
16:3
**confidence (1)**
17:18
**Congress (3)**
5:17;7:16,17
**Connecticut (2)**
15:19,21
**consistent (1)**
21:4
**construed (1)**
11:7
**Continuing (2)**
12:14;19:23
**controlled (2)**
19:11,13
**Cooperate (1)**
19:16
**corners (1)**
12:3
**correctly (1)**
8:4

cost (1)
    20:6
costs (2)
    19:25;20:2
counsel (3)
    12:25;18:9,13
Count (3)
    6:17,18,18
Counts (4)
    5:4,4,23,24
course (2)
    10:7,15
Court (67)
    3:2,4,5,9,11,14,19,
    25;4:7,10,15,18,22;5:1,
    13;7:10,23;8:5,7,8,16,
    19,21;9:1,11,13,15,18,
    20,22,25;11:17;12:8,
    10,12,22;13:12,17,19,
    22,25;14:2,10,13,15,
    17,19;16:7,12,22;17:9,
    18;20:25;21:2,7,17,24;
    22:1,14;23:5,7,13;24:2,
    7,12,15,18
courthouse (1)
    6:8
COURTROOM (4)
    3:3,15,18;24:17
Court's (1)
    13:13
crime (1)
    19:10
criminal- (2)
    4:11;12:23
criminal-history (1)
    12:23
criteria (1)
    11:9

D

dangerous (1)
    20:15
David (1)
    3:11
day (3)
    10:16,17;20:12
daylights (1)
    17:15
days (3)
    20:19;24:4,10
dealing (1)
    7:1
dealt (2)
    5:7;7:14
death (1)
    15:6
deaths (1)
    15:6
decide (3)
    19:23;20:3;23:8
decides (1)
    20:13

decisions (1)
    5:13
deemed (1)
    11:17
DEFENDANT (14)
    3:17;4:9,14,17,21;
    10:8;11:2;15:13,13,22;
    16:2,11;17:17;21:8
defense (1)
    4:12
delivered (1)
    11:22,23
denying (1)
    13:12
Department (1)
    18:20
depend (1)
    23:3
depending (1)
    21:9
DEPUTY (4)
    3:3,15,18;24:17
determine (1)
    23:10
Devens (1)
    16:6
difference (2)
    6:25;12:25
different (6)
    5:25;7:1;10:19,19;
    11:24;15:17
directed (1)
    11:20
directly (8)
    7:15,16,19;10:8,11;
    11:4;13:12;22:16
disagree (1)
    13:10
discusses (1)
    20:24
disrupt (1)
    6:7
disruption (2)
    6:6,21
distinct (2)
    11:20,25
District (2)
    3:4;24:18
disturbing (1)
    15:4
divided (1)
    5:4
DNA (1)
    19:16
documentation (2)
    21:12,14
documents (1)
    3:7
dollars (2)
    18:18;22:10
done (2)
    7:3;16:15
doubt (1)

13:14
down (4)
    4:4;9:7;12:22;13:1
drug (2)
    19:13,19
drugs (1)
    4:15
during (1)
    16:1

E

earn (1)
    23:1
effect (1)
    19:14
effects (1)
    5:13
eighty-four (1)
    17:24
else (5)
    13:7;14:22;16:21;
    19:24;24:13
emphasize (1)
    18:20
enables (1)
    23:8
encouraged (1)
    17:13
end (3)
    6:16,17;17:24
enhancement (6)
    7:6,18,24;8:9;10:6,
    22
enough (1)
    22:23
entered (1)
    3:20
entitled (3)
    8:10;24:3,3
entry (1)
    24:4
especially (1)
    6:11
essence (1)
    18:1
evacuate (1)
    6:9
even (8)
    8:11;10:3,14,20;
    11:18,21;12:2,3
everybody (2)
    5:11;7:2
Exactly (1)
    12:11
excellent (1)
    13:8
excuse (4)
    11:11,23;20:24;21:3
existence (1)
    12:7
experienced (1)
    4:11

extent (2)
    20:18;22:17
extremely (1)
    15:3

F

facilities (2)
    15:18,20
facility (2)
    14:12;16:6
fact (4)
    5:14;10:7;14:20;
    21:18
facts (2)
    11:9;12:10
factual (3)
    11:10;13:25;14:1
failed (2)
    15:12,13
fairly (2)
    5:3;17:9
familiar (2)
    6:8;23:14
family (2)
    11:15;23:3
far (7)
    7:2,3;8:24;10:4,21;
    11:5;23:4
favor (2)
    8:15;15:15
FBI (1)
    23:21
federal (4)
    11:16;16:6;19:7,10
feel (2)
    16:15,16
feels (2)
    18:3,12
fifty (1)
    10:15
figures (1)
    22:19
file (1)
    23:15
filed (3)
    3:25;4:2;13:8
Financial (1)
    22:9
find (3)
    4:18;6:21;9:14
finding (2)
    11:8;17:7
findings (2)
    13:25;14:1,20;21:18
fine (5)
    18:16,17;22:4,5;
    24:12
firearm (1)
    20:15
first (7)
    4:7;10:10,12,20;
    11:19;16:23;22:15

five (1)
    5:4
follow (1)
    20:9
following (1)
    24:4
footnote (2)
    8:1,3
forever (1)
    16:25
forgotten (1)
    20:22
form (1)
    12:4
forth (2)
    12:19;22:6
forward (1)
    17:7
forwarded (1)
    23:23,23
found (2)
    15:22,23
four (4)
    5:4;6:5,15,20,21;
    12:3,4,14
fourteen (2)
    13:1;20:19
Fourth (1)
    8:2
frantically (1)
    9:14
Frazer (3)
    11:11,12;12:5
free (1)
    4:18
front (1)
    23:20
functions (1)
    6:7
further (1)
    16:1
future (1)
    17:19

G

gather (2)
    13:12;24:1
gets (1)
    21:8
given (1)
    3:7
giving (1)
    18:1
good (4)
    18:12;20:1;22:4;
    24:11
Government (20)
    5:7;6:11,23;7:13;
    8:10;9:25;13:4,23;
    14:22,24;15:10,11,11;
    18:3;20:22;21:13;22:3,
    19;24:6,8

**Government's (3)**
12:18;17:24;24:3
**greater (1)**
8:10
**group (8)**
5:3,5;6:13,14,18,18,
24;12:16
**grouped (2)**
5:23,24
**groups (5)**
5:4,5;10:10;11:22;
12:17
**guideline (3)**
8:13,24;18:2
**guidelines (9)**
5:11,14,18,22;8:11;
13:4,10;17:25;18:2
**guilty (1)**
10:18

**H**

**half (1)**
10:16
**hall (1)**
6:10
**hand (1)**
3:16
**happen (1)**
20:7
**harm (2)**
16:15;17:3
**heard (1)**
22:12
**hearing (1)**
7:6
**heavily (1)**
5:19
**help (4)**
16:17;17:8;18:9,10
**helped (1)**
17:6
**highest (1)**
12:15
**highlight (1)**
15:8
**history (2)**
12:24;15:5
**Honor (32)**
3:10,13,24;4:6,25;
7:4,12;8:6,20,25;9:9,
24;10:2,20,23;11:23;
12:6,20;13:9,24;14:9,
24;15:3,14;20:23;
21:11;22:12,20;23:19;
24:11,14,16
**Honorable (2)**
3:3;24:17
**hope (2)**
17:19;18:15
**hopeless (1)**
18:7
**horrible (1)**

15:6
**Hospital (2)**
15:19;16:18
**hospitalization (1)**
15:16
**hospitals (1)**
15:12
**house (1)**
20:12
**housed (1)**
14:11
**hundred (1)**
18:18

**I**

**II (2)**
5:5,23
**III (3)**
5:5,24;6:17
**importance (1)**
6:23
**important (5)**
14:15;18:19,21;19:3;
20:7
**impose (3)**
19:12;21:7;22:4
**imposing (2)**
20:1;22:5
**impressed (1)**
17:20
**impressive (1)**
17:11
**improving (1)**
17:7
**incarcerated (1)**
19:22
**incarceration (1)**
17:6
**inconsistent (1)**
21:3
**incorrect (1)**
8:14
**increase (4)**
6:15,15,16;8:11
**indictment (1)**
12:4
**indictments (1)**
10:18
**indirectly (1)**
7:15
**individual (2)**
7:21;23:21
**individuals (2)**
5:25;11:25
**influence (1)**
4:18
**information (4)**
21:15,20;23:21,22
**Inmate (1)**
22:9
**inpatient (1)**
20:5

instead (1)
3:21
**institutions (2)**
18:10,14
**intended (1)**
7:18
**intent (1)**
13:13
**interpretation (1)**
17:25
**interpreted (1)**
5:18
**into (2)**
5:4;19:14
**investigation (3)**
3:22;5:9;22:6
**involve (1)**
7:20
**involved (3)**
5:25;6:12,22
**issue (3)**
7:14;10:5;11:4
**IV (4)**
5:5,24;6:18;12:24

**J**

**Joseph (1)**
3:8
**judge (5)**
3:21;9:19;18:22;
19:1,8
**judge's (1)**
11:15
**judgment (3)**
5:16;21:9;22:7

**K**

**keeps (1)**
5:12
**kind (1)**
15:20
**knocking (1)**
13:3

**L**

**last (1)**
5:23
**latter (1)**
11:21
**law (2)**
7:25;8:14
**laws (1)**
4:20
**least (1)**
10:10
**leave (1)**
13:21
**leaves (1)**
11:5
**leaving (1)**

11:9
**lengthy (1)**
9:5
**less (1)**
6:19
**letter (3)**
7:21;8:3;10:12
**letters (16)**
6:7;10:15,16;11:1,2,
2,14;12:1,4;15:5;
16:13,14,18,19,23;17:3
**level (5)**
6:2,4,14,17;12:15
**levels (2)**
6:4,6
**life (2)**
17:7;19:3
**lists (1)**
21:4
**little (1)**
6:19
**living (1)**
17:15
**local (1)**
19:10
**locate (1)**
9:17
**locked (1)**
16:24
**long (1)**
9:6
**look (8)**
8:23;9:1;10:6;12:3;
17:2,6;19:21;20:2
**looking (2)**
5:11;17:3
**lot (4)**
17:5,13,15;22:25
**low-end (1)**
9:6

**M**

**magistrate (1)**
3:21
**mailing (1)**
11:15
**maintained (1)**
7:5
**makes (2)**
17:12;23:7
**making (3)**
12:18,20;17:13
**mandatory (4)**
5:15;18:17;19:6;
22:15
**many (3)**
7:20;11:1;23:14
**matter (3)**
12:25;13:15;24:19
**mature (1)**
17:6
**maturing (1)**

17:5
**may (6)**
17:18;19:22,23,24;
20:6,11
**mean (6)**
7:13,16,25;8:24;
10:22;17:9
**means (2)**
17:13;18:8
**meant (1)**
9:21
**medical (1)**
16:6
**memorandum (9)**
3:25;4:1;5:12,12;
8:22;10:3,24;15:1,9
**mental (1)**
19:19
**mental-health (5)**
14:12;17:4;18:13;
19:21;20:8
**mention (1)**
10:23
**met (1)**
11:9
**mic (1)**
4:5
**middle (1)**
17:10
**middle-aged (1)**
17:10
**might (2)**
7:23;14:3
**minimal (1)**
23:2
**moment (1)**
19:15
**money (3)**
21:21;22:23;23:1
**month (1)**
22:10
**monthly (2)**
21:7;23:8
**months (9)**
9:4,6,7;10:15;12:24;
13:1,14;17:22;18:4
**more (7)**
6:5,10;7:9,21;10:14;
12:7;16:14
**most (2)**
7:4;11:2
**motion (1)**
12:18,21
**move (1)**
11:18
**much (5)**
16:11;17:1,3,12;
24:15
**multiple (1)**
11:7
**must (1)**
19:9
**myself (1)**

17:1

## N

**named (1)**
7:22
**nature (1)**
4:23
**necessarily (2)**
11:25;15:18
**need (4)**
10:4,14,20;16:7
**needed (1)**
20:13
**needs (1)**
12:8
**night (1)**
20:12
**nominal (1)**
21:7
**nonetheless (2)**
15:25;16:19
**nonguideline (2)**
17:23;18:4
**note (3)**
5:21;13:20;15:9
**noted (3)**
4:1;6:9;8:2
**notice (1)**
9:10
**November (1)**
5:22
**Novick (15)**
3:11,13;10:2;12:11,
20;13:20,24;14:24;
20:23;21:2,15;23:12,
19;24:11,16
**number (3)**
9:16;10:8;11:24
**numbers (1)**
21:19

## O

**object (2)**
21:14;22:17
**objection (7)**
4:2;7:10,12;13:13,
20;24:1,5
**objections (3)**
7:5,5;14:5
**obvious (2)**
5:24;15:16
**obviously (3)**
10:25;13:9;15:1
**O'CLOCK (2)**
3:1;24:19
**off (3)**
5:15;13:3;16:16
**offense (3)**
6:2,4;12:15
**offenses (1)**
16:1

**office (5)**
6:9;21:16,20,20;
23:24
**officer (1)**
18:25
**official (1)**
6:23
**one (12)**
7:5,8,16,21,22;8:1,
16;10:8;11:15;15:8,19;
18:15
**ones (2)**
5:23;10:17
**only (3)**
6:25;14:9,9
**open (3)**
3:4;11:5,9
**opinion (1)**
15:10
**orally (1)**
13:8
**order (8)**
3:2;12:9;21:2,3,13;
22:20,21;24:5
**ordered (1)**
22:5
**ought (2)**
15:25;23:8
**out (14)**
5:6,16;7:7;8:19,21;
9:2;10:3;14:7;17:15;
18:1,9,13,21;21:9
**outpatient (1)**
20:5
**outside (1)**
12:3
**over (6)**
3:22;4:1,7;5:2;10:15,
16
**overwhelmingly (1)**
8:15
**own (1)**
14:1

## P

**page (3)**
5:20;9:1;12:14
**panicked (1)**
16:25
**papers (1)**
13:8
**paperwork (1)**
23:20
**paragraph (10)**
5:21,21;7:7;9:4;
20:23,24;21:4,22;22:1,
6
**paragraphs (1)**
12:19
**Pardon (2)**
18:23;19:2
**Parker (2)**

11:12;12:5
**part (10)**
10:25;11:3;14:10,21;
19:24;20:6;21:16,17;
22:7;24:9
**partaken (1)**
4:15
**Participate (2)**
20:4;22:25
**particular (3)**
10:5;11:19;15:24
**parties (2)**
11:23,24
**past (2)**
11:18;17:5
**path (1)**
24:6
**Patten (7)**
3:8;4:11,22;13:2,6;
14:4;20:19
**pay (4)**
18:17;19:24;20:3,6
**payments (3)**
23:8,9,10
**people (7)**
6:11,12;15:2;16:14,
20;17:16;23:18
**per (2)**
4:2;22:10
**perhaps (1)**
14:16
**periods (1)**
16:5
**person (1)**
20:11
**phone (1)**
7:23
**place (3)**
16:4;17:4;22:15
**plain (1)**
8:8
**play (1)**
18:3
**plea (2)**
3:20,20
**pleas (1)**
10:18
**Please (2)**
3:4,15
**plus (1)**
6:15
**PM (2)**
3:1;24:20
**point (3)**
10:3;13:16;23:13
**pointed (2)**
18:9,13
**points (1)**
5:16
**portion (1)**
20:3
**position (3)**
14:6,8,25
**provide (1)**

**possess (2)**
19:11;20:15
**possibility (2)**
11:6,10
**possible (1)**
17:1
**post (1)**
6:9
**post-office (1)**
6:11
**Prejean (12)**
3:6,8,17;4:8,9,14,17,
21;16:9,11;17:17;
22:22
**Prejean's (1)**
15:4
**premier (1)**
15:19
**presentation (1)**
17:11
**pre-sentence (9)**
3:22;5:9;7:8,19;14:8,
19,20;18:7;22:6
**pre-sentencing (1)**
14:4
**pre-set (1)**
5:6
**prevent (1)**
22:24
**prison (4)**
18:15,21;22:22;
23:10
**prisoner (1)**
22:24
**Prisons (2)**
18:12;22:9
**private (1)**
15:15
**privileges (1)**
22:25
**Probably (4)**
8:18;19:25;22:10;
23:2
**Probation (20)**
15:18;17:20;18:6,20,
24;19:20,21;20:1,4,8,
12;21:16,16,18,19,20;
23:8,10,16,23
**proceed (6)**
5:1;10:14;11:5,19;
24:6,8
**proceedings (1)**
4:23
**process (1)**
17:16
**program (8)**
18:13;19:14,20;20:4,
8,9;22:9,24
**progress (1)**
17:13
**proof (1)**
23:18

24:2
**provided (5)**
21:12,15,20,21;
23:22
**PSR (3)**
4:1;13:25;20:24
**psychiatric (1)**
15:12
**public (3)**
6:22;15:25
**published (1)**
5:23
**purposes (2)**
7:6;18:8
**put (7)**
12:17,22;14:6;16:1,
25;19:14;23:16

## R

**raise (2)**
3:15;13:7
**raised (1)**
13:7
**range (3)**
8:25;9:6,7
**rather (2)**
5:15;9:3
**rationale (1)**
12:5
**read (1)**
4:1
**real (2)**
16:15,24
**reality (1)**
10:15
**realize (2)**
16:13;17:2
**really (4)**
5:16,18,19;9:2;
16:15,24;18:1,8
**reason (3)**
6:20;10:13;22:4
**reasons (4)**
5:24;11:19;13:11;
15:24
**receive (3)**
14:12;15:2;16:14
**receiving (1)**
15:5
**recess (2)**
3:4;24:18
**recipients (2)**
11:21,25
**recollection (1)**
23:19
**recommend (3)**
14:11;18:11;19:23
**recommendation (2)**
17:21;18:6
**recommendations (1)**
20:9
**recommended (1)**

7:18
**record (6)**
10:25;12:13;13:21;
14:6;21;24:10
**redid (1)**
22:2
**reduce (1)**
15:15
**reductions (1)**
12:18
**reflected (1)**
21:22
**regard (1)**
14:25
**regardless (1)**
22:18
**Register (1)**
19:20
**related (3)**
10:8,11;12:9
**release (4)**
9:5;18:19;19:6;
22:22
**released (1)**
23:9
**rely (2)**
5:19;12:8
**relying (1)**
7:25
**remember (1)**
8:4
**report (12)**
3:23;5:9;7:8,19;14:4,
8,19,20;18:7;21:17,18;
22:7
**reported (1)**
10:11
**representation (1)**
4:12
**represented (2)**
4:10;20:19
**representing (1)**
4:24
**represents (1)**
3:8
**request (1)**
23:15
**requested (3)**
21:21;23:20,21
**requesting (1)**
23:18
**requirement (1)**
20:13
**requires (2)**
21:11;22:16
**respect (1)**
14:7
**respective (2)**
21:5;24:2
**respond (1)**
10:1
**Responsibility (1)**
22:9

**restitution (15)**
20:24,25;21:3,4,11,
13,19;22:5,8,16,21,24;
23:15,18;24:4
**result (1)**
12:9
**retaliation (1)**
10:11
**right (28)**
3:14,16,19;4:4,10;
5:1,14;8:12;9:9,16,19,
25;12:12,22;13:19,22,
23;14:2,15;16:9;17:11,
19;20:17,18,22;21:24;
24:13,15
**risk (1)**
16:1
**Roland (3)**
3:5,17;4:8

**S**

**safe (1)**
18:3
**salary (1)**
21:10
**same (8)**
6:14,15,16,24;7:13;
10:9,16;11:14
**sample (1)**
19:16
**satisfied (2)**
4:12,22
**saying (1)**
10:2;23:7
**scare (1)**
16:20
**scared (1)**
17:15
**school (1)**
6:10
**Scott (2)**
11:13;12:5
**se (1)**
4:3
**search (2)**
20:11,13
**season (1)**
19:9
**seated (1)**
3:4
**second (1)**
10:13
**secondly (1)**
22:20
**seek (2)**
17:7;22:11
**seems (3)**
5:2,8;22:1
**select (1)**
18:15
**send (1)**
23:3

**sense (3)**
8:3;17:12;23:7
**sent (5)**
10:14,16,17;11:2;
16:23
**sentence (9)**
9:3;13:13;14:11;
15:15;16:10;17:23;
18:2,4;20:17
**sentencing (13)**
3:6;4:3,19;5:22;
7:17;8:11;10:24;14:25;
15:9;17:22;18:6,11;
24:4
**separate (2)**
11:17,24
**serious (2)**
15:1,7
**seriously (1)**
13:14
**set (3)**
12:18;14:7;22:6
**Seventh (2)**
11:11,12
**seventy (10)**
8:19,22;9:2,7,19,23;
13:2,14;17:22;18:4
**several (4)**
7:14;10:15;11:1,8
**shift (2)**
19:23;20:2
**sic (1)**
19:19
**sides (1)**
12:13
**similar (1)**
8:3
**simply (2)**
7:12,25
**single (1)**
11:6
**sit (1)**
4:4
**situation (3)**
7:20;8:9;21:1
**six (3)**
6:10,15,22
**Sixth (1)**
11:14
**sixty (6)**
9:3,4,6;13:1;24:3,10
**slight (1)**
9:5
**small-G (1)**
15:11
**sneezes (3)**
18:22;19:1,8
**solely (1)**
12:8
**someone (2)**
7:21;22:22
**sometimes (2)**
7:22,22

**sorry (2)**
7:17;8:20
**sort (1)**
4:3
**speak (1)**
4:4
**special (2)**
18:18;19:14
**specific (1)**
10:23
**spelled (1)**
7:7
**stand (1)**
3:15
**standard (1)**
19:12
**standpoint (1)**
5:10
**start (4)**
5:20;6:2,19;10:2
**started (2)**
9:10,17
**state (4)**
15:11,20;19:7,10
**stated (2)**
7:19;8:8
**States (7)**
3:3,5,12;4:20;6:3,3;
24:17
**status (1)**
23:16
**still (4)**
5:15;12:6,7;22:17
**Stokes (8)**
8:5;10:1,4,14;11:4,5;
12:5,8
**subject (2)**
10:17,18
**submission (3)**
8:17;9:2;23:17
**submit (3)**
10:25;12:6;20:11
**substance (2)**
19:11,13
**substance-abuse (2)**
20:5,9
**substantial (1)**
6:6
**suggest (1)**
23:25
**supervised (3)**
9:5;18:19;19:6
**supervision (1)**
18:24
**supported (1)**
21:21
**Supreme (1)**
5:13
**Sure (1)**
10:2
**suspend (1)**
23:9
**swear (1)**

3:14
**SWORN (1)**
3:17

**T**

**talking (3)**
8:5;9:17;13:3
**telling (1)**
5:12
**tells (1)**
20:8
**ten (1)**
9:7
**Tenth (1)**
11:13
**term (2)**
9:5;18:18
**testing (2)**
19:13;20:5
**That'd (1)**
24:12
**that'll (1)**
20:7
**therefore (1)**
6:22
**there're (1)**
5:25
**third (2)**
11:23,23
**though (1)**
13:11
**thought (3)**
16:17,25;17:1
**threaten (1)**
15:5
**threatened (2)**
10:9,10
**threatening (6)**
6:7;7:7;21;11:15,16,
24;15:3
**threats (7)**
6:5;7:9;11:7,17,20,
22;12:7
**three (1)**
18:19
**throw (1)**
16:17
**tie (1)**
14:3
**till (1)**
23:9
**times (1)**
23:14
**today (1)**
4:16
**together (2)**
12:17;14:3
**total (3)**
6:12;21:6;22:1
**town (1)**
6:9
**treat (2)**

15:12,13
**treatment (8)**
  14:12;15:20;16:2;
  17:4;18:13;19:21,22;
  20:5
**trouble (2)**
  16:13;17:1
**truly (1)**
  15:2
**try (2)**
  18:9;20:2
**trying (6)**
  9:14;16:2,2,3,16,17
**turn (1)**
  17:14
**twenty (2)**
  6:24,25
**twenty-four (1)**
  6:12
**Two (10)**
  6:4,5,15,20;7:9;
  10:10;11:14,19,21;
  12:7
**two-level (2)**
  7:6;18:1
**typo (2)**
  8:16,22

### U

**ultimately (1)**
  15:14
**under (7)**
  6:17,17;7:7;9:3;
  17:21;18:17,24
**undergo (1)**
  16:2
**understands (1)**
  4:23
**understood (1)**
  15:23
**United (7)**
  3:3,5,11;4:20;6:3,3;
  24:17
**units (2)**
  12:14,14
**unlawful (1)**
  19:13
**unlawfully (1)**
  19:10
**up (7)**
  6:12,16,17,25;11:16;
  16:24;17:24
**upon (4)**
  18:5;19:19;22:21;
  23:17
**use (1)**
  19:13
**useless (1)**
  20:1
**using (1)**
  5:22

### V

**Valley (1)**
  15:19
**variance (2)**
  9:5;13:14
**various (2)**
  15:12;23:16
**vehicle (1)**
  20:12
**victim (1)**
  10:9
**victims (9)**
  6:11;10:10,19;21:5,
  22;22:15,17;23:21;
  24:2
**violating (1)**
  6:2
**violation (1)**
  4:20

### W

**waived (1)**
  20:18
**wants (2)**
  13:2,7
**warrant (1)**
  20:14
**warranted (1)**
  8:12
**way (8)**
  5:6,7,8,17;14:3;
  16:16,19;24:7
**ways (2)**
  10:22;17:7
**weapon (1)**
  20:16
**What's (1)**
  23:15
**whenever (1)**
  18:11
**Whereupon (1)**
  24:19
**who's (1)**
  4:11
**willing (1)**
  23:3
**withdrawn (1)**
  7:4
**within (4)**
  8:11,12;20:18;24:10
**without (1)**
  20:13
**worded (1)**
  16:19
**written (1)**
  6:1
**wrote (2)**
  16:18,19
**Wyatt (1)**
  16:23

### Y

**year (1)**
  13:4
**years (1)**
  18:19
**young (2)**
  17:9,10

### 1

**1 (6)**
  5:5,22;6:13,17;
  12:16;20:23
**1:35 (1)**
  3:1
**105 (1)**
  12:24
**11 (2)**
  5:20;9:1
**110 (5)**
  20:24;21:4,23;22:1,6
**12 (3)**
  6:4,14,19
**13 (1)**
  12:14
**14 (1)**
  6:5
**14,159.53 (1)**
  22:2
**18 (2)**
  6:3,3

### 2

**2 (3)**
  5:6;6:14,17
**2:09 (1)**
  24:19
**2012 (1)**
  5:22
**24 (2)**
  6:17;12:15
**25 (2)**
  12:22,23
**26 (1)**
  9:4
**28 (1)**
  12:17
**2A6.1b2A (1)**
  7:7

### 3

**3 (2)**
  5:6;6:18
**3:10-206 (1)**
  3:6
**300 (1)**
  22:10
**3553 (4)**
  5:17,19;17:21;18:8

**3553a (1)**
  5:17

### 4

**4 (3)**
  5:6;6:18,24
**43 (1)**
  5:21
**44 (1)**
  5:21
**44e (1)**
  6:3
**46 (1)**
  7:7

### 5

**51 (1)**
  7:8
**56 (1)**
  7:8

### 6

**60 (1)**
  7:8

### 7

**70 (1)**
  12:19
**71 (1)**
  12:19

### 8

**84 (1)**
  12:24
**876c (1)**
  6:3